*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1885**

Ruth Unger, et al.,
Respondents,

vs.

AAA Insurance Company,
Appellant.

**Filed August 10, 2015
Affirmed
Rodenberg, Judge**

Crow Wing County District Court
File No. 18-CV-14-1512

John W. Person, Alex D. Kuhn, Breen & Person, Ltd., Brainerd, Minnesota (for respondents)

Michael W. Lowden, Shari L. Lowden, The Lowden Law Firm, LLC, Minnetonka, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Rodenberg, Judge; and Chutich, Judge.

**U N P U B L I S H E D   O P I N I O N**

**RODENBERG**, Judge

Appellant challenges the district court's confirmation of a No-Fault arbitration award, arguing among other contentions that the Minnesota No-Fault Automobile Insurance Act (NFAIA) requirement of "mandatory and binding arbitration" of claims for

$10,000 or less is unconstitutional. Because appellant has failed to demonstrate any violation of a constitutional right or to demonstrate other reversible error by the district court, we affirm.

**FACTS**

In 2010, respondents Ruth and Amanda Unger were injured in a car accident, after which they received chiropractic care and physical therapy. On July 26, 2011, appellant AAA Insurance Company sent a letter to respondents indicating that ongoing benefits were being denied. The letter also stated that "[i]f you disagree with our decision, you have our permission to arbitrate if the amount in dispute as of the time of filing is $10,000.00 or less, if over $10,000.00, we do not agree to arbitrate."

Respondents then filed a petition for arbitration, claiming medical expenses for Ruth Unger of $6,565.94, lost wages for Ruth Unger of $2,219.25, and treatment expenses at Renneke Chiropractic for Amanda Unger of $199.20. Appellant and respondents received a list of potential arbitrators from which they were each allowed to strike one arbitrator and instructed to rank the remaining arbitrators in order of preference. An arbitrator was selected. He completed an Arbitrator Appointment Form, checking the box "I have nothing to disclose" in the form's disclosure section. An arbitration hearing was scheduled for October 2, 2013.

On the morning of October 2, 2013, appellant raised a concern that statements on the website of the arbitrator's law firm called into question the arbitrator's impartiality. That same day, the arbitrator made seven disclosures, as follows:

1. I currently have active clients treating at both Renneke Chiropractic Clinic and Northern Orthopedics.

2. In the last 3 years I have had a number of clients treat at both Renneke Chiropractic or Northern Orthopedics. I have not calculated a specific number but it is well over a dozen for both facilities.

3. I do not represent either of these clinics in any capacity, however I have arbitrated No-Fault claims as claimant's counsel where these facilities' bills were at issue.

4. I have not specifically used any doctors from either of these two facilities as expert witnesses at trial in the last 3 years but I have requested numerous narrative reports from some of the doctors from both facilities.

5. I have also been referred a case by [the partner of appellant's counsel] within the last several years. I do not recall the specifics of the case, but no referral fee was involved.

6. I know [respondents' counsel] personally and we are competitors in the same community.

7. I handle cases against all of the major insurance companies from time to time and I market aggressively to the local public for that work.

Appellant objected to the arbitrator's appointment. The American Arbitration Association (AAA) affirmed the arbitrator's appointment. Appellant appealed to the Standing Committee. *See* Minn. Stat. § 65B.525, subd. 1 (2014)[1] ("The Supreme Court . . . shall by rules of court or other constitutionally allowable device, provide for the mandatory submission to binding arbitration . . . [for cases] in an amount of $10,000 or less."); Minn. R. No-Fault Arb. 1(b) ("The Arbitration under Minn. Stat. [§] 65B.525 shall be administered by a Standing Committee"). The Standing Committee reaffirmed the arbitrator's appointment.

---

[1] We refer to the 2014 statute, which has not materially changed since the arbitration hearing.

3

The arbitration hearing was held on January 10, 2014. On January 20, 2014 the arbitrator awarded $11,539.74 to respondents. Appellant moved the district court to vacate the arbitrator's award based on evident partiality of the arbitrator and also sought a declaratory judgment that the mandatory and binding arbitration requirement of the Minnesota No-Fault Automobile Insurance Act (NFAIA) unconstitutionally deprived parties of the right to a jury trial. Appellant served a notice of constitutional challenge on the Minnesota Attorney General by U.S. mail, as required by the Minnesota Rules of Civil Procedure. Minn. R. Civ. P. 5A. Respondents moved the district court to confirm the arbitrator's award and enter judgment.

Appellant later amended its motion and sought review of the constitutionality of the NFAIA on three additional grounds. Appellant personally served the amended notice of motion and motion on an assistant attorney general in the Minnesota Attorney General's office.

The district court concluded that appellant demonstrated neither evident partiality of the arbitrator, nor that the arbitrator exceeded his authority. Concerning appellant's constitutional challenges, the district court concluded that "the State was never made a party" and that the case presented no justiciable controversy because there was "no genuine conflict present in this case." Lastly, the district court held that personal service on the assistant attorney general was ineffective, and therefore "the Attorney General was never served with a copy containing [appellant's] additional constitutional challenges." It concluded that appellant's jury-trial constitutional challenge was the sole challenge properly before the district court and that the statute's constitutionality had been decided

4

by *Neal v. State Farm Ins. Co.*, 509 N.W.2d 173, 178-79 (Minn. App. 1994), *rev'd on other grounds*, 529 N.W.2d 330 (Minn. 1995).  The district court confirmed the arbitrator's award.  This appeal followed.

## D E C I S I O N

Appellant argues on appeal that the district court erred in concluding that service was ineffective, in upholding the constitutionality of the NFAIA, and in confirming the arbitration award in favor of respondents.  We address each argument in turn.

## I.

### A.    Service on Attorney General

Appellant argues that the district court erroneously concluded that the Minnesota Attorney General was not properly served with notice of appellant's constitutional challenges to the NFAIA.  The effectiveness of service is a question of law that we review de novo.  *Shamrock Dev., Inc. v. Smith*, 754 N.W.2d 377, 382 (Minn. 2008).  "[I]n conducting this review, we must apply the facts as found by the district court unless those factual findings are clearly erroneous."  *Id.*  A party challenging the constitutionality of a state statute must "serve the notice and paper" challenging the statute "on the Minnesota Attorney General . . . by [United States] Mail to afford the Attorney General an opportunity to intervene."  Minn. R. Civ. P. 5A.

Generally, proper service is made upon the State by delivering a copy to the attorney general, a deputy attorney general, or an assistant attorney general.  Minn. R. Civ. P. 4.03(d).  The supreme court has strictly construed rule 4, requiring service solely as provided by the rule.  *See, e.g.*, *Duncan Elec. Co., Inc. v. Trans Data, Inc.*, 325

5

N.W.2d 811, 812 (Minn. 1982) (concluding that the office receptionist in a business office was "not authorized to exercise or make any independent judgments regarding the business" of the entity, and therefore service upon her did not comply with the rule that process be delivered to "an officer or managing agent" (quotations marks omitted)); *see also Tullis v. Federated Mut. Ins. Co.*, 570 N.W.2d 309, 311 (Minn. 1997) ("Service of process in a manner not authorized by the rule is ineffective service.").

An advisory committee comment to rule 5A states that "the purpose of the notice is to permit the Attorney General receiving it to decide whether to intervene in the action" and that "in many instances intervention will not be sought until the litigation reaches the appellate courts." Minn. R. Civ. P. 5A, 2007 advisory comm. cmt. The comment also notes that "[t]he federal rule requires service . . . by certified or registered mail" but observes that "[t]he committee believes that service of this notice by U.S. mail is sufficient for this purpose." *Id.*

We need not conclude whether personal service of the amended motion on the assistant attorney general satisfied the requirements of Minn. R. civ. P. 5A, because "proper notice in the district court is not an absolute precondition to appellate consideration of important constitutional issues." *Erickson v.* Fullerton, 216 N.W.2d 208 (Minn. App. 2000). Generally, reviewing courts should not consider issues that have not been considered in the district court. *Weston v. McWilliams & Assocs., Inc.*, 716 N.W.2d 634, 640 (Minn. 2006). "Nonetheless, [reviewing courts] have the latitude to address any matter as the interest of justice may require." *Id.* at 641 (quoting Minn. R. Civ. App. P. 103.04). Because we conclude that the attorney general's office was adequately notified

6

of appellant's constitutional challenge, both at the district court and on appeal,[2] we exercise our discretion to address appellant's constitutional arguments on the merits.

## B.  Constitutionality of the NFAIA

Appellant argues that the NFAIA unconstitutionally deprives litigants of their right to a jury trial, due process, and the right to a certain and complete remedy.  Appellant also contends that the NFAIA unconstitutionally divests the district court of original jurisdiction.  Respondents argue that the district court properly determined that the NFAIA's arbitration requirement does not unconstitutionally deprive individuals of a jury trial.

"The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy."  Minn. Const. art. I, § 4.  "Cases at law" are claims historically considered "legal" claims rather than "equitable" claims.  *Rognrud v. Zubert*, 282 Minn. 430, 433-34, 165 N.W.2d 244, 247 (1969); *see also* Minn. R. Civ. P. 38.01 (stating that "actions for the recovery of money only . . . shall be tried by a jury, unless a jury trial is waived or a reference is ordered").  Contractual indemnity claims are legal and the remedies for breach are ordinarily monetary, consequently a contract dispute "shall be tried by a jury."  *United Prairie Bank-Mountain Lake v. Haugen Nutrition & Equip., LLC*, 813 N.W.2d 49, 63 (Minn. 2012) ("Because the nature of the claim is contractual and the remedy sought is legal, we hold that appellants are

---

[2] It is undisputed that the Minnesota Attorney General was properly served by U.S. Mail with notice of this appeal, which complies with rules 125.03 and 144 of the Minnesota Rules of Civil Appellate Procedure.

7

entitled to a jury trial on attorney fees under Article I, Section 4 of the Minnesota Constitution.").

In 1994, we concluded that the NFAIA's mandatory arbitration requirement was constitutional and did not violate the right to a jury trial. *Neal*, 509 N.W.2d at 179. Because we presume statutes are constitutional, appellant has the "burden to prove beyond a reasonable doubt that the [challenged] statute is unconstitutional" and "[g]reat caution must be exercised before declaring a statute unconstitutional." *Id.* at 178. Arbitrators in NFAIA proceedings only decide issues of fact; interpretation of the law remains with the courts. *Id.* at 175.

Despite our holding in *Neal*, appellant argues that the NFAIA unconstitutionally deprives it of its right to a jury trial by the mandate of binding arbitration of claims of $10,000 or less. *See* Minn. Stat. § 65B.525. We disagree. First, we rejected this argument in *Neal*. Second, we cannot fully consider the issue, because appellant failed to make the insurance contract at issue a part of the record before us on appeal. We observe that Minnesota's standard personal injury protection (PIP) automobile policy incorporates the statutory arbitration requirements of the NFAIA into the policy form, providing:

> Arbitration
> If we and an "insured" do not agree on the amount of benefits payable under this coverage, and:
>
> > 1. The amount of benefits in dispute is $10,000 or less, the matter will be submitted to arbitration.
> > 2. The amount of benefits in dispute is more than $10,000, we will advise the "insured" whether we will submit the claim to arbitration.

8

> Arbitration will be conducted in accordance with the Rules of Procedure For No-Fault Arbitration contained in the Minnesota Insurance Laws.

SERFF Filing Access Program, Minnesota Department of Commerce, http://mn.gov/commerce/insurance/ins-companies/rate-and-form-filing/index.jsp (follow "Access SERFF Filings" hyperlink; follow "Begin Search" hyperlink; follow "Accept" hyperlink; then search for tracking number ISOF-129627861) (last visited June 13, 2015).[3]

By failing to make the insurance policy at issue a part of the record, appellant has failed to demonstrate that its constitutional rights have been violated. If the contract at issue incorporated the statutory language requiring arbitration of claims of $10,000 or less, as does Minnesota's standard PIP policy, appellant contractually *agreed* to arbitration. *See* Minn. Stat. § 65B.525, subd. 2 (2014) (stating that "cases . . . may be referred to arbitration by agreement of reference . . . signed by counsel for both sides, or by the parties themselves."); Minn. R. Civ. P. 38.01(stating that actions for monetary recovery "shall be tried by a jury, *unless . . . a reference is ordered.*" (Emphasis added)). And the July 26, 2011 letter from appellant to respondents explicitly *invites* arbitration, stating that "*you have our permission to arbitrate* if the amount in dispute as of the time of filing is $10,000.00 or less, if over $10,000.00, we do not agree to arbitrate." (Emphasis added.) This language strongly suggests that, like the standard PIP policy,

---

[3] Appellant makes no argument on appeal that it was forced to adopt a policy that conformed to the statute and therefore could not or did not validly waive the right to a jury trial.

appellant's policy provides for arbitration of claims. At the very least, appellant has failed to demonstrate otherwise.

Because appellant has not made the contract at issue a part of the record on appeal, we do not know whether it mandates arbitration of contract disputes. Appellant has failed to prove beyond a reasonable doubt that the policy did not call for resolution of disputes through arbitration proceedings, which would moot its argument that it was bound to arbitrate because of the NFAIA. We therefore conclude that appellant failed to meet its burden to demonstrate that it was unconstitutionally deprived of its right to a jury trial.

Similarly, appellant challenges the NFAIA's constitutionality on grounds that it unconstitutionally deprives appellant of due process, of a certain and complete remedy, and that it divests the district court of original jurisdiction. Here again, appellant's failure to make the insurance contract at issue a part of the record is fatal to appellant's constitutional claims. Appellant has not demonstrated that it has not waived these rights by contract. And appellant's July 26, 2011 letter inviting arbitration strongly suggests that the underlying policy contemplates arbitration of disputes of this sort. *See* Minn. Stat. § 65B.525, subd. 2 ("The rules of court may provide that cases which are not at issue, whether or not suit has been filed, may be referred to arbitration by agreement of reference signed by counsel for both sides, or by the parties themselves."). We therefore conclude that appellant failed to meet its burden to prove that the NFAIA unconstitutionally deprives it of due process or a certain and complete remedy, or that it unconstitutionally divests the district court of original jurisdiction.

10

## II.

Appellant also challenges the district court's confirmation of the arbitration award, arguing that the arbitrator exceeded his authority by presiding over a claim exceeding the $10,000 statutory limit at the time the petition was filed.

Courts will vacate arbitration awards only if one or more of the statutory grounds are proven; courts will not vacate an arbitration award because of disagreement with the merits of the decision. *Liberty Mut. Ins. Co. v. Sankey*, 605 N.W.2d 411, 413 (Minn. App. 2000). One basis for court review is the "arbitrability or the power of a tribunal to hear the matter before it." *Id.* "Absent a clear showing that the arbitrators were unfaithful to their obligations, the courts assume that the arbitrators did not exceed their authority." *QBE Ins. Corp. v. Twin Homes of French Ridge Homeowners Ass'n*, 778 N.W.2d 393, 398 (Minn. App. 2010) (quotation omitted). We resolve "every reasonable presumption . . . in favor of the finality and validity of the award." *Seagate Tech., LLC v. W. Digital Corp.*, 854 N.W.2d 750, 761 (Minn. 2014). Arbitration awards will be set aside if the objecting party shows that the arbitrator has clearly exceeded the powers granted to him. *Id.* at 760-61.

The NFAIA requires binding arbitration "of all cases at issue where the claim at the commencement of arbitration is in an amount of $10,000 or less against any insured's reparation obligor." Minn. Stat. § 65B.525, subd. 1. In interpreting the NFAIA, we have concluded that "[c]laims of $10,000 or less at the time of the filing of the petition for arbitration are required to be arbitrated." *Karels v. State Farm Ins. Co.*, 617 N.W.2d 432, 435 (Minn. App. 2000). The arbitrator retains jurisdiction "where the jurisdictional

11

amount is exceeded by further expenses or losses accruing after the petition is filed." *Id.* (citing *Charboneau v. Am. Fam. Ins. Co.*, 481 N.W.2d 19, 22 (Minn. 1992)).

When an arbitrator applies settled law, the arbitrator does not exceed his or her authority. *Id.* In determining whether the arbitrator here exceeded his powers, our examination is properly confined to whether the arbitrator was within his authority to decide the question, not to "examine the underlying evidence and record, or otherwise delve into the merits of the award." *Sankey*, 605 N.W.2d at 414.

Appellant argues that respondents' claim exceeded $10,000 at the time of filing because, at the arbitration hearing, respondents presented bills into evidence that totaled $26,285.48.

Appellant concedes, as it must, that the petition for arbitration claimed less than $10,000 in medical and income loss benefits: $8,984.39. The petition unambiguously states that the claim is under $10,000 and itemizes the claims for each respondent and type of loss (medical or wage). Although appellant argues in its brief that "[r]espondents submitted to the arbitrator for his consideration a claim in the amount of $26,240.48 of which $17,734.40 was incurred pre-filing of the petition for arbitration," it provides no detail about the charges that comprise the $17,734.40. Both to the district court and to this court on appeal, respondent's counsel maintains that he presented *all* of respondents' treatment bills at the arbitration hearing – even bills already paid – to ensure that the record was complete. He maintains that this is common practice in no-fault proceedings. And the arbitrator, in his report on the arbitration proceedings, separated the claims awarded "at time of filing of Petition" and those that were "[a]dditional . . . since filing

12

the Petition" and provided the award totals for each item, separated by wage losses, mileage, and medical expenses. The award on its face does not reveal that respondents' claims exceeded the jurisdictional limit at the time of filing. Appellant has not met its burden to show that the arbitrator clearly exceeded his powers. *See Seagate*, 854 N.W.2d at 760-61.

## III.

Appellant also argues that the district court erred in confirming the arbitration award because the arbitrator demonstrated evident partiality.

An arbitration award may be vacated only on grounds provided by statute. *AFSCME Council 96 v. Arrowhead Reg'l Corr. Bd.*, 356 N.W.2d 295, 299 (Minn. 1984); *see* Minn. Stat. § 572B.23 (2014) (listing the statutorily available reasons to vacate an arbitration award). An arbitration award may be vacated for "evident partiality by an arbitrator," when an arbitrator exceeds its powers, or where there was no agreement to arbitrate. Minn. Stat. § 572B.23(a); *see also* 2010 Minn. Laws, ch. 264, art. 1, § 32 (repealing Minn. Stat. § 572.19 and creating the Uniform Arbitration Act at 572B.01). If an arbitrator discloses a fact that a reasonable person would consider likely to affect the impartiality of the arbitrator, it may serve as grounds to vacate the award upon a timely objection. Minn. Stat. § 572B.12(c) (2014). An award may also be vacated if an arbitrator does not disclose any of these required facts. Minn. Stat. § 572B.12(d) (2014).

Whether challenged conduct constitutes evident partiality or prejudicial misconduct presents a legal question that we review de novo. *Pirsig v. Pleasant Mound Mut. Fire Ins. Co.*, 512 N.W.2d 342, 343 (Minn. App. 1994). "When reviewing a no-

13

fault arbitration award, questions of law are reviewed de novo," but the "arbitrator's findings of fact are final." *State Farm v. Liberty Mut. Ins. Co.*, 678 N.W.2d 719, 721 (Minn. App. 2004). Arbitration awards have been reversed "where the nature of the relationship complained of was long-standing and repeated." *Safeco Ins. Co. v. Stariha*, 346 N.W.2d 663, 666 (Minn. App. 1984). A remote and unrelated attorney-client relationship between the neutral arbitrator and counsel for one of the parties is not a basis to vacate an arbitration award for evident partiality. *Id.*

Evident partiality ordinarily occurs "when a neutral arbitrator has contacts with a party or another arbitrator that might create an impression of possible bias." *Aaron v. Ill. Farmers Ins. Grp.*, 590 N.W.2d 667, 669 (Minn. App. 1999) (quotation omitted). Minnesota's No-Fault Arbitration Rules provide that "[t]he fact that an arbitrator or the arbitrator's firm represents automobile accident claimants against insurance companies or self-insureds, including the respondent, does not create a presumption of bias." Minn. R. No-Fault Arb. 10(b).[4] But a person is not eligible to serve as arbitrator if the person, within the last year "has been hired by the [insurer] to represent the [insurer or its] insureds in a dispute for which [insurer] provides insurance coverage." *Id.*

Appellant initially challenged the appointment of this arbitrator because of statements made on the arbitrator's website. Both the AAA and the Standing Committee

---

[4] We observe that the Minnesota Supreme Court recently established a comment period for modification of rule 10, but this proposed rule change applies only to referrals to an arbitrator from entities whose bills are at issue in the arbitration. No such claim is advanced in this appeal. *See Order Establishing Comment Period on Proposed Amendments to Rules of No-Fault Insurance Arbitration Procedure*, No. ADM09-8011 (Minn. June 25, 2015) (order).

14

considered that objection, and both reaffirmed the appointment of the arbitrator. Appellant identifies no rule of law that would disqualify the arbitrator from serving, nor any basis for concluding that this arbitrator was biased, other than that he represents automobile-accident claimants against insurers, something the arbitration rules expressly indicate is not a disqualifier.

The arbitration rules require that arbitrators be licensed attorneys who have "at least 5 years in practice in this state" and "at least one-third of the attorney's practice is with auto insurance claims or, for an attorney not actively representing clients, at least one-third of an ADR practice is with motor vehicle claims or no-fault matters." Minn. R. No-Fault Arb. 10(a). The rules not only accept but *require* that arbitrators be attorneys practicing in this area of law. It is not for us to redesign the arbitration regime contemplated by the NFAIA.[5]

Appellant's arguments for vacating the arbitrator's award are mostly challenges to the findings and conclusions of the arbitrator, rather than arguments concerning evident partiality. Appellant essentially argues that the arbitrator's award was not appropriate, and that we should therefore conclude that the arbitrator must have been partial to respondents. The district court analyzed the arbitrator's award and found it was reasonable and proper, ultimately concluding that "none of [the arbitrator's] disclosures were of such significance as to cause a reasonable person to believe that impartiality would likely be affected." We agree with the district court's conclusion.

_____

[5] Arbitrators receive a fee of a mere $300 for serving. Minn. R. No-Fault Arb. 40(a).

15

Appellant has failed to demonstrate a basis for the arbitrator to have been disqualified. The district court did not err in confirming the arbitration award.

**Affirmed.**